UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SUSAN L. POOLE; THOMAS CLATTERBUCK; SUE
CLATTERBUCK; JOSEPH S. COCHRAN; BRENDA
S. COCHRAN; CHARLES C. MANNER; DENNIS H.
OWENS; BRENT ROGERS; ROBERT SHAW; NEW
YORK ANIMAL AND FARM, LLC; JOHN DOE 1;
JOHN DOE 2; JANE DOE 2; JOHN DOE 3; JOHN
DOE 4; JOHN DOE 5; JOHN DOE 6; JOHN DOE 7;
and JANE DOE 7,

                    Plaintiffs,

v.                                                5:20-CV-0697
                                                  (GTS/ATB)

BRIAN BENDIXEN; AMBER BROWN; KAREN
CARTIER; EARL DEHMEY; JAMES KELLEHER;
SHARAD MARTHUR; ALEX BACHELOR;
MARTIN BATES; ALAN BERNON; ANDREW
BRUMMEL; KRISTEN COADY; DAVID DARR;
DOUG GLADE; KEITH GOMES; BRAD KEATING;
JACKIE KLIPPENSTEIN; MONICA MASSEY;
RANDY McGINNIS; PAT PANKO; DENNIS
RODENBAUGH; RICK SMITH; KEVIN STRATHMAN;
EDWARD TILLEY; JAY WALDVOGEL; GREG
WICKHAM; JOHN WILSON; LARRY BAILEY; BRUCE
BARTLEY; WILLIAM BESANCON; PATRICIA
BIKOWSKY; KENNETH BIRKER; KEITH
BROUMLEY; GLEN EASTER; CRAIG ELDER;
TRAVIS FOGLER; ALAN GERRATT; GREGORY
GIBSON; BUSTER GOFF; LARRY GRIFFITH;
LARRY HANCOCK; DEAN HANDY; BRIAN
HARDY; TODD HATHORN; JERREL HEATWOLE;
KENT HERMAN; NEIL HOFF; GARRY KIBLER;
CHRIS KRAFT; LILAH KREBS; SCOTT LACKEY;
BYRON LEHMAN; MELVIN MEDEIROS;
RANDY MOONEY; LARKIN MOYER; DWIGHT
NASH; DOUG NUTTELMAN; THOMAS OELRICHS;
PETER OLSEN; LEROY ORNELLAS; JACQUES
PARENT; VALERI PATTEN; RICK PODTBURG;
JEFF RANEY; BRIAN REXING; TERRY ROWLETT;
DAN SENESTRARO; RON SHELTON; LARRY
SHOVER; JERRY SPENCER; SANDY STAUFFER;
STEVE STRICKLER; PERRY TJAARDA; CASE VAN

STEYN; DAVID WHITE; and JOHN WOEBLER,

                    Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

LAW OFFICE of JOSHUA HAAR                        JOSHUA HAAR, ESQ.
  Counsel for Plaintiffs
1495 Paddock Road
West Edmeston, NY 13485

BOND SCHOENECK & KING, PLLC                      BRIAN J. BUTLER, ESQ.
  Counsel for Defendants
One Lincoln Center
Syracuse, NY 14202

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this civil Racketeer Influenced and Corrupt Organizations ("RICO") action filed by the above-captioned dairy supply business, dairy company shareholder and seventeen dairy farmers ("Plaintiffs") against the seventy-five above-captioned agents, managers and board members of a national dairy cooperative ("Defendants"), are Defendants' motion to dismiss Plaintiffs' Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and Defendants' motion for sanctions pursuant to Fed. R. Civ. P. 11.  (Dkt. No. 11; Dkt. No. 15.)  For the reasons set forth below, Defendants' motion to dismiss is granted, and Defendants' motion for sanctions is denied.

## I.      RELEVANT BACKGROUND

### A.      Summary of Plaintiffs' Complaint

Generally, liberally construed, Plaintiffs' Complaint alleges that the Dairy Farmers of

America, Inc. ("DFA"), through Defendants (i.e., its agents, managers, and board members),
used extortion to gain control of both the exclusive market for dairy farmers' raw milk and the
exclusive source of finished dairy products for retail in numerous areas of the country.  (*See
generally* Dkt. No. 1 [Plf.'s Compl.].)  Based on these factual allegations, Plaintiffs' Complaint
claims that Defendants violated the Racketeer Influenced and Corrupt Organizations Act
("RICO") 18 U.S.C. § 1964, and asks the Court to do the following: (1) declare Defendants
liable for damages for racketeering; (2) order the receivership and subsequent divestiture of all
processing operations owned or controlled by the DFA; (3) order the DFA be dissolved and any
equity returned to its member farms, and that those member farms be released from any and all
obligation to the DFA; (4) award damages, costs, and attorneys' fees; and (5) award such further
relief as the Court sees fit.  (*See generally id*.)

### B.      Three Alleged Predicate Acts of Extortion

Plaintiffs' Complaint and Civil RICO Statement alleges that Defendants committed three
acts of extortion that qualify as predicate acts sufficient to support their RICO claims.  (Dkt. No.
1; Dkt. No. 10.)[1]  To provide context for the parties' legal arguments and the Court's analysis,
the Court describes the alleged acts below.[2]

### 1.      Consent to Settle Antitrust Claims

The first alleged predicate act originated in June 2014, when the DFA was facing a jury
trial in Vermont on antitrust grounds.  (Dkt. No. 1, at  42.)  According to Plaintiffs, in 2016,
after two unsuccessful attempts to settle the lawsuit, the DFA's leadership extorted dairy farmers

---

[1]      The Court notes that, pursuant to Local Rule 9.2 of the District's Local Rules of Practice,
a Civil RICO Statement shall be construed as an amendment to the pleadings.

[2]      Because Plaintiffs' RICO Statement contains substantially the same allegations as their
Complaint, the Court will cite Plaintiffs' Complaint only.

(who were members of the DFA and had previously rejected the first two settlements) with threats that, if those dairy farmers did not sign and support the DFA's settlement, those farmers should consider switching to organic milk production and start looking for new processing plants, they would be dismissed from their cooperatives, and their cooperatives could lose access to DFA's nation-wide marketing entity Dairy Marketing Services[3] ("DMS"). (*Id.* at   43-44.) More than 1,200 farmers from the DFA and other entities, including "independent" dairy farmers, signed the DFA's form letters, and the suit against the DFA was settled and closed. (*Id.* at   45.)

### 2.    Obtaining a Controlling Share of the National Milk Supply

The second alleged predicate act occurred when the DFA's leadership, emboldened by the earlier coerced settlement, used its control over national milk markets to make it impossible for a mid-sized plant to find milk outside of the DFA/DMS, or for an individual farmer or small cooperative to send its milk to such a plant. (*Id.* at ¶ 46.)  According to Plaintiffs, the DFA managers gave independent farmers and cooperatives who had shipped their products through DMS a choice: market their milk through the DFA and agree to a "market adjustment" deduction from the farmers' pay price, or lose market access. (*Id.* at   47.)  Although the U.S. Department of Agriculture estimated the milk per-hundredweight cost of production to be $21.74 in 2018 (including land, equipment, and labor put in by unpaid owner/operator farmers), one Midwest cooperative's DFA market adjustment was more than 25% of its farmers' per-hundredweight milk price of $16.00, and a northeast farm had to choose between losing $2.50 of its per-hundredweight price of $12.00 or having no market access for its milk. (*Id.* at   48-49.)

The DFA managers also used the cooperative's position as the primary supplier of certain

---

[3]      According to Plaintiffs, DMS ceased operations in 2017. (Dkt. No. 1, at   46.)

regional dairy processors to dictate the terms on which those processors could accept milk from smaller cooperatives or individual farmers, thereby substantially controlling the entire milk market without exercising direct ownership of it.  (*Id.* at   50.)  After the DFA absorbed another cooperative in 2019, Agri-Mark and its 850 members became the only significant alternative cooperative in the northeast.  (*Id.* at   52.)  However, Agri-Mark was and is forbidden from taking on members from the DFA without its express permission.  (*Id.*)  DFA managers were able to charge milk buyers over-market prices for milk products while simultaneously paying farmers less than the cost of production, because prospective dairy farmers had no viable option, aside from the DFA, to whom to sell their milk, and prospective milk processors had no other viable option, aside from the DFA, from which to buy milk.  (*Id*. at   53.)  Numerous dairy farmers, regardless of whether they are members of the DFA or other smaller "independent" cooperatives, were and are afraid to raise any concern out of a fear of retaliation from the DFA. (*Id.* at   54.)

### 3.    Controlling the Nation's Largest Dairy Processing Network

The third alleged predicate act concerned the DFA's relationship with Dean Foods. According to Plaintiffs, DFA's management demanded Dean Foods pay the DFA over-market prices in order to maintain access to its milk, which constituted approximately 60% of Dean Foods' milk utilization.  (Dkt. No. 1 at   56.)  On or about November 12, 2019, Dean Foods filed for chapter 11 bankruptcy, listing the DFA as its largest trade creditor; the DFA was owed $173 million, while the second-largest trade creditor was owed $8 million.  (*Id.* at   58.)  During the time leading up to the Dean Foods bankruptcy filing, the DFA was, at substantially all times, Dean Foods' primary supplier of USDA Grade A raw milk, and the amounts paid for the USDA

Grade A raw milk were, at substantially all times, Dean Foods' primary input cost.  (*Id*. at ¶ 59.)
When Dean Foods announced its bankruptcy filing, it also announced that it was in advanced
discussions with the DFA to transfer substantially all of its assets to the DFA.  (*Id.* at ¶ 63.)

Despite the availability of financing for an out-of-court restructuring prior to the
bankruptcy filing, Dean Foods expressed no real interest in restructuring to avoid bankruptcy.
(*Id*. at ¶ 65.)  Mr. Gary Ralphs served on PepsiCo's senior management in 2015 when PepsiCo
turned over a $206 million plant in Batavia, New York, to the DFA for thirty cents on the dollar
following the bankruptcy of a PepsiCo dairy processing joint venture with Quaker Muller.  (*Id*.
at ¶ 64.)  In May 2019, Mr. Ralphs became a Senior Vice President at Dean Foods in its Finance
and Strategy Division; in September 2019, he became Dean Foods' CFO, a position he held for
the duration of the bankruptcy and sale to the DFA.  (*Id*.)  Dean Foods had no alternative source
for the volume of milk which the DFA provided during its working relationship, and, even if it
had located an alternative source for the volume of milk, Dean Foods could not materially
breach or terminate its milk supply agreement with the DFA without incurring a $96 million
penalty.  (*Id*. at ¶ 66.)  Had Dean Foods continued operating into 2021, the penalty would have
expired without any obligation to pay any portion of the principal or interest.  (*Id.*)

### C.    Parties' Briefing on Defendants' Motion to Dismiss

Generally, in support of their motion to dismiss, Defendants assert the following six
alternative arguments: (1) Plaintiffs' Complaint should be dismissed for failure to comply with
the timely filing of a RICO statement, pursuant to Local Rule 9.2 of the District's Local Rules of
Practice, because Plaintiffs were required to file their RICO statement by July 22, 2020, and
instead filed their RICO statement on September 3, 2020, approximately six weeks late, with no

excuse or explanation for their tardiness; (2) Plaintiffs' Complaint fails to satisfy fundamental

notice and pleading requirements because (a) it fails to assert a single factual allegation about the

conduct of any of the seventy-five (75) Defendants, and Plaintiffs' RICO statement similarly

fails to expressly allege that any one individual Defendant actually committed two predicate acts

or otherwise conspired to commit a RICO violation, and (b) even where Plaintiffs' RICO

statement does refer to individual Defendants, it impermissibly lumps their conduct together

without any differentiation or explanation, offering only vague, sweeping allegations that are

plainly insufficient to satisfy Rule 8's minimum standard; (3) Plaintiffs lack standing to assert

their RICO claim because (a) their Complaint does not allege any link between Defendants'

conduct and Plaintiffs in that their first and second alleged predicate acts do not include any

allegations that Defendants caused any injury to Plaintiffs, (b) the third predicate act makes no

reference to any action by Defendants nor any injury that they allegedly caused Plaintiffs, and,

even if the Complaint had alleged that DFA's management pressured Dean Foods to overpay for

DFA's milk (which in turn led Dean Foods to declare bankruptcy, which in turn injured Dean

Foods' shareholders), it is nevertheless insufficient to establish RICO standing for Plaintiff Poole

or the dairy farmer Plaintiffs, (c) the law is well settled that a company's shareholders generally

lack standing to assert a civil RICO claim, and Plaintiff Poole's suit as a shareholder fails to

show she suffered any different individual harm as compared to other shareholders, and (d)

nothing in Plaintiffs' RICO statement asserts any particularized allegations about how any one of

the individual Defendants proximately caused harm to any one of the individual Plaintiffs; (4)

Plaintiffs have failed to sufficiently plead a RICO claim because (a) they have failed to allege a

RICO conspiracy in that the alleged conspiracy of the operational agreement among the DFA's

individual board members and managers to create and use the fear of personal failure to force substantially all U.S. dairy farmers to market their milk through Defendants' enterprise fails to allege that Defendants knowingly conspired to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity, (b) Plaintiffs have not adequately alleged a substantive RICO violation in that (i) their Complaint fails to allege which predicate act Defendants committed, and the civil RICO statement also fails to allege that any one Defendant committed two predicate acts, (ii) none of the predicate acts alleged by Plaintiffs qualifies as a RICO extortion under the Hobbs Act given that the use of economic fear as leverage to drive a hard bargain in an ordinary commercial relationship does not support a RICO claim based on extortion, (iii) even if the predicate acts were true and timely (which they are not), the first and second predicate acts cannot constitute extortion under the Hobbs Act given that Defendants' conduct was lawful hard-bargaining, and Plaintiffs did not have any "preexisting right" or entitlement to do business with the DFA, and (iv) Plaintiffs third predicate act, even if true, alleges that Defendants committed extortion against a third party, not Plaintiffs, and, in any event, the alleged conduct does not constitute extortion under the Hobbs Act, (c) Plaintiffs' Complaint fails to allege a pattern of racketeering in that it fails to allege that any Defendant committed two cognizable predicate acts of extortion, and (d) Plaintiffs have not sufficiently alleged Defendants' relationship to a RICO enterprise in that Plaintiffs fail to pled the existence of an enterprise separate and apart from the DFA, which is insufficient as a matter of law; (5) Plaintiffs have failed to establish personal jurisdiction over Defendants because (a) Plaintiffs fail to allege facts plausibly suggesting that a specific Defendant resides in, is found in, has an agent in, or transacts his or her affairs in the Northern District of New York, and (b) Plaintiffs'

substantial business standard is inapplicable to establish personal jurisdiction for RICO claims; and (6) the claim brought by the anonymous John and Jane Doe Plaintiffs should be dismissed because there is no conceivable privacy concern that could justify any Plaintiff proceeding anonymously.  (*See generally* Dkt. No. 11, Attach. 3 [Defs.' Mem. of Law].)

Generally, in opposition to Defendants' motion, Plaintiffs assert the following seven arguments: (1) their Complaint alleges both the direct and proximate cause of their RICO injuries because (a) the sequence between Defendants' alleged extortion and Plaintiffs' injury is direct in that Plaintiffs lost milk income as a result of Defendants' extortion, and (b) Plaintiff Poole's loss of invested shares in Dean Foods is a personal and independent injury in that her loss of share value constituted a personal loss to her; (2) Plaintiffs' Complaint provides fair notice to Defendants because (a) it sufficiently traces Plaintiffs' injuries to each Defendant by initially listing each individual Defendant as an "agent," "manager," or "board member," who "performed," "directed," or "aided and abetted" a conspiracy, and by subsequently describing which conduct was performed by individuals or groups of individuals, and (b) the relevant inquiry is what is the nature of each Defendant's participation in the unlawful agreement, not whether each Defendant committed each predicate act; (3) Plaintiffs' Complaint alleges an unmistakable pattern of racketeering because (a) it alleges three predicate acts of extortion and explains how each successive act made full use of the leverage gained by the preceding acts, (b) the predicate acts cannot be characterized as the use of lawful economic fear as leverage to drive a hard bargain in an ordinary commercial relationship in that Plaintiffs' fear extends beyond mere financial or business concerns due to Defendants' comprehensive control of available milk markets and the distribution network; (4) Plaintiffs' Complaint alleges a separate and distinct

RICO enterprise because (a) it alleges that Defendants conspired to operate the DFA by a pattern of racketeering in order to build a personally controlled milk empire and that Defendants were acting on behalf of their own interests when engaging in their "empire building" activities, which are fundamentally different than the DFA's marketing activities, (b) although these empire-building activities benefited the DFA as a whole, they plainly did not benefit the DFA as a cooperative due to the severe injuries suffered by many of the DFA's member-owners, and (c) even where the distinction between Defendants' milk-marketing and empire-building activities is less clear, the law cannot be read so as to merge the person and enterprise wherever some benefit from the person's illegal conduct can be attributed to the enterprise, or it would insulate racketeering under the very statute designed to eradicate it; (5) Plaintiffs' Complaint establishes personal jurisdiction over each Defendant because corporate agents are subject to personal jurisdiction within a district if their activities in the district are outside of the corporations' ordinary activities, and each Defendant has agreed to further an unlawful course of conduct outside of the DFA's ordinary activities, which is the factual scenario in this case; (6) Plaintiffs' Complaint establishes jurisdiction over the claims of the John and Jane Doe Plaintiffs because a plaintiff may proceed under a pseudonym where his or her interest in anonymity outweighs the general public interest in disclosure as well as any prejudice to Defendants and, in this case, the relative interests weigh in favor of the anonymous Plaintiffs in that they are essentially whistle-blowers and Defendants face no prejudice that the issues raised in this case arise from Defendants' own misconduct, which are not directed at any individual plaintiff or Doe Plaintiff; and (7) Plaintiffs' claims are timely because (a) the statute of limitations runs for four years from the time the plaintiff discovers or reasonably should have discovered the alleged injury (not from

the date of the alleged predicate acts) and here Plaintiffs did not reasonably discover the alleged injury until the DMS ceased operations in 2017, (b) Defendants' objection to the RICO statement on timeliness grounds is moot in that they argue that Plaintiffs RICO statement "fails to aid Plaintiffs' claims" and "largely rehashed generic, undetailed, and unspecific allegations," and (c) in any event, both parties were working in good faith on other aspects of the case, and Defendants gained an additional three-and-a-half weeks to review the RICO Statement prior to filing their response to the Complaint, thereby nullifying any good-faith basis to challenge the RICO statement's timing.  (*See generally* Dkt. No. 14 [Plfs.' Mem. of Law].)

Generally, in reply to Plaintiff's opposition, Defendants repeat their original arguments, and clarify them as follows: (1) Plaintiffs' Complaint should be dismissed for failure to comply with Local Rule 9.2 because (a) they were required to file their RICO Statement by July 22, 2020, and instead filed it on September 3, 2020, without requesting leave from the Court to file six weeks late, (b) Defendants' view of the quality of Plaintiffs' RICO Statement is irrelevant to its timeliness, and (c) while both parties were working on other aspects of the case, Plaintiffs' deadline for filing their RICO Statement (or an agreement about extending the deadline) was never discussed; (2) Rule 8 of the Federal Rules of Civil Procedure requires the dismissal of Plaintiffs' Complaint because Defendants' conduct is impermissibly lumped together, and Plaintiffs have not identified any other allegations in their RICO Statement (aside from their "grouping" of Defendants) that provide any greater notice to Defendants of their alleged misconduct; (3) Plaintiffs have failed to establish RICO standing by failing to allege that (a) they fail to allege that Defendants, alone or as a group, proximately caused an injury to any Plaintiff, (b) the subset of dairy farmer-Plaintiffs who allege they have been injured by the extortion of

11

milk-check deductions do not allege a single fact plausibly suggesting that their injury was caused by any Defendant, and (c) Plaintiff Poole has no standing as a shareholder of Dean Foods in that the law is well settled that a company's shareholders generally lack standing to bring a civil RICO claim; (4) Plaintiffs have failed to sufficiently plead a RICO conspiracy because (a) their Complaint fails to allege an agreement to commit a substantive RICO violation in that their allegation that Defendants maintained an "operational agreement among DFA's individual board members and managers to create and use the fear of personal failure as stewards . . . to force substantially all U.S. dairy farmers to market their milk through Defendants' enterprise" does not allege that Defendants agreed to commit racketeering, to commit predicate acts, or otherwise commit a substantive RICO violation, and (b) Plaintiffs have failed to allege the required elements of a substantive RICO violation in that (i) their Complaint does not allege the conspiracy included an agreement to commit cognizable predicate acts (given that that the DFA, as a cooperative, can certainly engage in hard-bargaining with its members), and the second and third predicate acts do not even concern the DFA's own members, (ii) Second Circuit precedent explains that hard-bargaining can occur even where someone is desperate and the economic consequences of refusing an act are dire, and (iii) Plaintiffs' first alleged predicate act is untimely because Plaintiffs' allege that DFA's managers extorted them into signing letters in support of a settlement, thereby injuring the signees, outside of the four-year statute of limitations period, (c) Plaintiffs have failed to allege a pattern of racketeering activity in that they have failed to allege that a Defendant committed two cognizable predicate acts, and (d) Plaintiffs have failed to sufficiently allege a RICO enterprise in that (i) their Complaint alleges that the enterprise at issue is the DFA, and (ii) their Complaint does not allege that the enterprise

at issue is some association-in-fact consisting of Defendants carrying out activities separate and apart from their work as DFA board members and employees; (5) Plaintiffs have failed to establish personal jurisdiction over each Defendant because, in a civil RICO action, a plaintiff must show that a specific defendant resides in, is found in, has an agent in, or transacts his or her affairs in the district, and Plaintiffs have failed to allege any of these activities occurred within the Northern District of New York; and (6) the claims brought by anonymous Plaintiffs should be dismissed because the law provides for anonymity only in "exceptional cases," and this is no such "exceptional" case.  (*See generally* Dkt. No. 16.)

### D.     Parties' Briefing on Defendants' Motion for Sanctions

Generally, in support of their motion for sanctions, Defendants assert the following two arguments.  First, Defendants argue that sanctions should be imposed on both Plaintiffs' counsel and Plaintiffs themselves because the Complaint is frivolous, unsupported in law, and unsupported in fact.  (Dkt. No. 15, Attach. 6, at 14-23.)  In support of this argument, Defendants reassert their arguments from their motion to dismiss.  (*Id.*)  Defendants also highlight the prior history of Plaintiffs' counsel's with the DFA, specifically his prior involvement in *Haar v. Allen*, 687 F. App'x 93, 95 (2d Cir. 2017), the denial of his *pro hac vice* application in *Carlin v. DairyAmerica, Inc.*, 09-CV-0430, 2019 U.S. Dist. LEXIS 115717, at *6-7 (E.D. Cal. July 11, 2019), and his attempt to intervene in the bankruptcy proceedings concerning Dean Foods, where, after withdrawing a motion under an apparent "threat of sanction," he filed a "highly inflammatory and unprofessional amicus brief."  (Dkt. No. 15, Attach. 6, at 11-12.)  Second, Defendants argue that Plaintiffs' Complaint was filed for an improper purpose because the Complaint is strikingly inadequate on its face and it was filed in service of the personal agenda

of Plaintiff's counsel, not in service of justice. (*Id.* at 23-24.)

Generally, in opposition of Defendants' motion for sanctions, Plaintiffs assert the following three arguments: (1) Plaintiffs have provided each Defendant with objective notice because (a) they have pled facts showing that each Defendant participated in an agreement to use their organization to extort other dairy industry participants to gain substantial control of the U.S. dairy industry, (b) each Defendant had authority over such activities, (c) each Defendant is subject to personal jurisdiction through purposeful availment, thereby satisfying Fed. R. Civ. P. 8, (d) the declarations submitted by Defendants in support of their motion support the fact that each Defendant was well aware of the extortion methods used within their organization, and (e) Defendant Heatwole's declaration is not credible because the evidence underlying Plaintiffs' Complaint involves Defendant Heatwole telling struggling farmers to "find another job [they] like because [the] DFA runs the dairy industry;" (2) Plaintiffs possess standing under the RICO act because (a) Defendants' definition of a legal standard omits the causation elements that places Plaintiffs' injuries within recoverable civil RICO injuries, (b) the predicate acts, by themselves, have no bearing on the statute of limitations issues, and Defendants attempt to conflate the actions of Defendants' first predicate act with the injury suffered by Plaintiffs, and (c) a shareholder has standing to recover personal injuries, and Second Circuit precedent explicitly provides for the recovery of injuries suffered by a shareholder where stock is stolen and the individual suffers an injury personal to him or her and no other; and (3) the facts alleged by Plaintiffs leave no doubt that the threats alleged are distinctly personal, not merely economic, and that the relationship between a dairy farmer and a cooperative which controls all outlets for the farm's milk is anything but an ordinary commercial relationship, both in terms of duty and of

14

comprehensive market control.  (*See generally* Dkt. No. 17.)

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing a Motion to Dismiss for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal."  *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."  *Jackson*, 549 F. Supp. 2d at

212, n.17 (citing Supreme Court cases) (emphasis added).[4]

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-82 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 561-62. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 555-70. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must

---

[4]      *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

16

contain at least "some factual allegation[s]." *Id*. at 555.  More specifically, the "[f]actual

allegations must be enough to raise a right to relief above the speculative level [to a plausible

level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  "[D]etermining whether a complaint states a plausible claim for relief

. . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience

and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than

the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the

pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 [internal quotation marks and citations

omitted].  However, while the plausibility standard "asks for more than a sheer possibility that a

defendant has acted unlawfully," *id*. at 678, it "does not impose a probability requirement."

*Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to

relief, "the tenet that a court must accept as true all of the allegations contained in the complaint

is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action,

supported by merely conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Similarly, a

pleading that only "tenders naked assertions devoid of further factual enhancement" will not

suffice.  *Id*.  (internal citations and alterations omitted).  Rule 8 "demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a

dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal

pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the

four corners of the complaint may be considered without triggering the standard governing a

motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer,

(2) documents incorporated by reference in the complaint (and provided by the parties), (3)

documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

any matter of which the court can take judicial notice for the factual background of the case.[5]


### B.    Legal Standard Governing a Motion for Rule 11 Sanctions

---

[5]    *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a
pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419,
422 (2d. Cir. 2011) (explaining that conversion from a motion to dismiss for failure to state a
claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the
"matters outside the pleadings" in consist of [1] documents attached to the complaint or answer,
[2] documents incorporated by reference in the complaint (and provided by the parties), [3]
documents that, although not incorporated by reference, are "integral" to the complaint, or [4]
any matter of which the court can take judicial notice for the factual background of the case);
*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district
court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in
the complaint, documents attached to the complaint as exhibits, and documents incorporated by
reference in the complaint. . . .  Where a document is not incorporated by reference, the court
may neverless consider it where the complaint relies heavily upon its terms and effect, thereby
rendering the document 'integral' to the complaint. . . .  However, even if a document is
'integral' to the complaint, it must be clear on the record that no dispute exists regarding the
authenticity or accuracy of the document.  It must also be clear that there exist no material
disputed issues of fact regarding the relevance of the document.") [internal quotation marks and
citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The
complaint is deemed to include any written instrument attached to it as an exhibit or any
statements or documents incorporated in it by reference.") (internal quotation marks and
citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d
Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate
by reference a [document] upon which it solely relies and which is integral to the complaint," the
court may nevertheless take the document into consideration in deciding [a] defendant's motion
to dismiss, without converting the proceeding to one for summary judgment.") (internal
quotation marks and citation omitted).

Rule 11(b)(2) of the Federal Rules of Civil Procedure provides in pertinent part that, by presenting a complaint to the court, the attorney signing or filing the complaint

> certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

Fed. R. Civ. P. 11(b)(2).  Rule 11(c)(1) provides in pertinent part that sanctions may be imposed on the attorney or any party that is "responsible for the violation."  Fed. R. Civ. P. 11(c)(1).  "Rule 11 is targeted at situations where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify, or reverse the law as it stands."  *Rodrick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (internal quotation marks omitted) (quoting *Associated Indem. Corp. v. Fairchild Indus.*, 961 F.2d 32, 34 [2d Cir. 1992]).  Because the inquiry must be "reasonable under the circumstances," liability for Rule 11 violations "requires only a showing of objective unreasonableness" on the part of the attorney or party.  *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997) (emphasis omitted); *accord*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009).

### C.    Legal Standard Governing Civil RICO Claims

It is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  Section 1962(d) applies the same prohibitions to a defendant who conspires to violate Section 1962(c).  *Malvar Egerique v. Chowaiki*, 19-CV-3110, 2020 WL

19

1974228, at *7 (S.D.N.Y. Apr. 24, 2020).  Section 1964 establishes a private right of action for

individuals who are harmed by racketeering activity.  18 U.S.C. § 1964.  This private right of

action permits a plaintiff to bring a RICO claim for sustaining injuries "in his business or

property by reason of a violation of section 1962."  18 U.S.C. § 1964(c).  Generally, a plaintiff

bringing a civil RICO claim under "Section 1962(c) must allege that (1) the defendant has

violated the substantive RICO statute, and (2) the plaintiff was injured in his business or

property "by reason of a violation of section 1962."  *Malvar Egerique*, 2020 WL 1974228, at *7

(citing *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 [2d Cir. 1983] [citing 18 U.S.C. § 1962(c)]).

More specifically, to assert a civil RICO claim under Section 1962(c), a plaintiff must allege the

following elements: "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering

activity."  *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).  Additionally, a

plaintiff asserting a civil RICO claim must plead facts plausibly suggesting a resulting "domestic

injury" to their business or property.  *RJR Nabisco, Inc. v. European Community*, 136 S. Ct.

2090, 2111 (2016).

      Regarding the second element, an "enterprise" includes "any individual, partnership,

corporation, association, or other legal entity, and any union or group of individuals associated in

fact although not a legal entity."  18 U.S.C. § 1961(4).  To allege an enterprise, a plaintiff must

allege an "ongoing organization, formal or informal" and that "the various associates function as

a continuing unit."  *United States v. Turkette*, 452 U.S. 576, 583 (1981).  In particular, a RICO

enterprise must be "an entity separate and apart from the pattern of activity in which it engages."

*Turkette*, 452 U.S. at 583.  The Second Circuit has "long recognized [that] the plain language

and purpose of the statute contemplate that a person violates the statute by conducting an

20

enterprise through a pattern of criminality.  It thus follows that a corporate person cannot violate the statute by corrupting itself." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (citing *Bennet v. U.S. Tr. Co. of N.Y.*, 770 F.2d 308, 315 [2d Cir. 1985]).  Accordingly, a plaintiff alleging a civil RICO claim must allege the existence of two distinct entities, a person, and an enterprise.  *Chowaiki*, 2020 WL 1974228, at *8; *Cruz*, 720 F.3d at 120.

Regarding the third and fourth elements, to sufficiently allege a "pattern of racketeering activity," a plaintiff must allege at least two acts of "racketeering activity" that occur within ten years of each other.  18 U.S.C. § 1961(5).  "Racketeering activity" refers to the predicate acts necessary to establish a RICO claim and includes extortion.  *See* 18 U.S.C. § 1961(1) (listing predicate acts that constitute a racketeering activity).  To qualify as a "pattern" of racketeering activity, the predicate acts "must be from the crimes listed in [Section] 1961(1) and they must be 'related, *and* . . . amount to or pose a threat of continued criminal activity.'"  *Westester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 608 (S.D.N.Y. 2015) (emphasis in original) (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 [2d Cir 1999]).  "'It is this factor of *continuity plus relationship* which combines to produce a pattern.'"  *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis in original) (quoting *Sedima*, 473 U.S. at 496 n.4).

Regarding the relationship factor, for predicate crimes to be considered related to each other under RICO, they must be related to both each other (termed "horizontal relatedness") and the enterprise as a whole ("vertical relatedness").  *Reich v. Lopez*, 858 F.3d 55, 60-61 (2d Cir. 2017 (citing *United States v. Cain*, 671 F.3d 271, 284 [2d Cir. 2012]).  "Vertical relatedness, which entails the simpler analysis, requires only 'that the defendant was enabled to commit the

offense solely because of his position in the enterprise or his involvement in or control over the enterprises' affairs, or because the offense related to the activities of the enterprise.'" *Reich*, 858 F.3d at 61 (quoting *United States v. Burden*, 600 F.3d 204, 216 [2d Cir. 2010]). "[P]redicate acts are *horizontally* related when they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 61 (emphasis in original) (quoting *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 [1989]). Therefore, "when dealing with an enterprise that is primarily a legitimate business . . . courts must determine whether there is a relationship between the predicate crimes themselves' and that requires a look at, *inter alia*, whether the crimes share 'purposes, results, participants, victims, or methods of commission.'" *Id.* (quoting *H.J.*, 492 U.S. at 240).

Regarding the continuity factor, "[t]o satisfy continuity, the plaintiff must establish either 'a series of related predicate acts extending over a substantial period of time' ('closed-ended continuity') or 'a threat of continuing criminal activity' ('open-ended continuity'). *Malvar Egerique*, 2020 WL 1974228, at *9 (quoting *Cofacredit, S.A.*, 187 F.3d at 242). "RICO targets conduct that 'amounts to or poses a threat of continued criminal activity.'" *Reich*, 858 F.3d at 60 (alterations omitted) (quoting *H.J.*, 492 U.S. at 239). Closed-ended continuity is "primarily a temporal concept" *id.* (quoting *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 [2d Cir. 2008]), "and it requires that the predicate crimes 'extend over a substantial period of time'" *id.* (quoting *H.J.*, 492 U.S. at 242). Generally, the Second Circuit "requires that the crimes extend over at least two years." *Id.* (citing *Spool*, 520 F.3d at 184). However, criminal activity that by its nature projects into the future with a threat of repetition is considered open-

ended continuity and can be established in several ways, including where the predicate acts were the regular way of operating that business, even if the business itself is primarily lawful. *Id.*

Finally, to allege a RICO conspiracy under 18 U.S.C. § 1962(d), a plaintiff must allege "a *conspiracy* to commit a substantive RICO violation." *Spool*, 520 F.3d at 183 (emphasis added). In particular, "[b]ecause the core of a RICO civil conspiracy is an *agreement* to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990) (emphasis added). As a result, to properly allege a civil RICO conspiracy under Section 1962(d), a plaintiff must allege that the defendant "knew about and agreed to facilitate the [RICO] scheme." *Salinas v. United States*, 522 U.S. 52, 66 (1997). Regarding the facilitation requirement, "a plaintiff must allege that the conspirator intended to further an endeavor that, if completed, would satisfy all of the elements of a substantive" criminal offense; however, it is sufficient for a plaintiff to allege that the "conspirator adopted the goal of furthering or facilitating the criminal endeavor." *Chowaiki*, 2020 WL 1974228, at *8.

## III.   ANALYSIS

### A.   Whether Plaintiffs Have Standing to Pursue Their Claims

After carefully considering the matter, the Court answers the question in the negative for the reasons stated in Defendants' memoranda of law. (Dkt. No. 11, Attach. 3; Dkt. No. 16.) To those reasons, the Court adds the following analysis, which is intended to supplement and not supplant Defendants' reasoning.

To establish Article III standing, a plaintiff must demonstrate (1) an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that can likely be

redressed by a favorable decision. *Mantena v. Johnson*, 809 F.3d 731, 731 (2d Cir. 2015). "The plaintiff . . . bears the burden 'clearly to allege facts [in his complaint] demonstrating that he is a proper party to invoke judicial resolution of the dispute.'" *Steinberger v. Lefkowitz*, 634 F. App'x 10, 11 (2d Cir. 2015) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 [1975]). Plaintiffs must also show that they have "prudential standing," which includes a "general prohibition on a litigant's raising another person's legal rights." *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 39 (2d Cir. 2015). The Second Circuit has recognized that "[a] shareholder–even a sole shareholder–does not have standing to assert claims alleging wrongs to the corporation." *Jones v. Niagra Frontier Transp. Auth. (NFTA)*, 836 F.2d 731, 736 (S.D.N.Y. 1983), *aff'd*, 742 F.2d 1440 (2d Cir. 1983). Rather, the plaintiff must have been injured in a "personal and individual way" in order to have standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992).

RICO standing is more rigorous than Article III standing. *Denny v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006). To establish standing to bring a civil RICO claim, a plaintiff must show the following: (1) a violation of Section 1962, (2) an injury to the plaintiff's business or property, and (3) that the defendant's violation was the proximate cause of the plaintiff's injury. *Baisch v. Gallina*, 346 F.3d 366, 372 (2d Cir. 2003) (citing *Lerner v. Fleet Bank, N.A.*, 318 F.3d 112, 120-24 [2d Cir. 2003]). "Proximate cause for RICO purposes . . . requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Secs. Investor Protection Corp.*, 503 U.S. 258, 268 [1992]).

In this case, there are three groups of Plaintiffs: a dairy supply business (New York Animal and Farm, LLC), a shareholder of Dean Foods (Susan Poole), and seventeen dairy

farmers.  The Court first addresses the question of the standing of the dairy supply business,

New York Animal and Farm, LLC ("Animal and Farm").  "[A] plaintiff does not have standing

if he suffered an injury that was indirectly (and hence not proximately) caused by the

racketeering activity or RICO predicate acts. . . ."  *Baish v. Gallina*, 346 F.3d 366, 373 (2d Cir.

2003) (citing *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120-24 [2d Cir. 2003]).  Here, Plaintiffs'

Complaint merely alleges that Plaintiff Animal and Farm's revenue stream was injured by

Defendants' racketeering activity in that Defendants indirectly caused Plaintiff Animal and

Farm's injury.  (Dkt. No. 1, at ¶ 3.)  This allegation, without more, fails to plausibly suggest a

direct relationship between the injury suffered and the injurious conduct alleged.  Plaintiffs'

Complaint also fails to identify which of the seventy-five Defendants were involved in Plaintiff

Animal and Farm's injury.  In short, because Plaintiffs' Complaint fails to allege that any of the

seventy-five Defendants proximately caused the injury to Plaintiff Animal and Farm, the Court

finds that Plaintiff Animal and Farm lacks standing to assert a civil RICO claim.

The Court next addresses the question of the standing of the shareholder Plaintiff, Susan

Poole.  For shareholders to have standing, they must plead facts plausibly suggesting that the

loss of their shares value was "separate and distinct from the injury sustained by the

corporation."  *Manson v. Stacescu*, 11 F.3d 1127, 1131 (2d Cir. 1993).  Although Plaintiff Poole

argues that she suffered a personal injury through the loss of share value, she fails to plausibly

suggest, let alone mention, how her loss is different from that of any other shareholder.

Moreover, Plaintiff Poole's argument that "Dean Foods' price and asset losses *may not*

*themselves be wholly derivative*" is speculative.  (Dkt. No. 14, at 8 [emphasis added].)  For each

of these two alternative reasons, the Court finds that Plaintiff Poole lacks standing to assert her

civil RICO claim.

Turning to the question of the standing of the dairy-farmer Plaintiffs, the Court also finds that they have failed to establish standing.  Specifically, they have failed to plead facts plausibly suggesting that a single Defendant personally harmed a single dairy-farmer Plaintiff.  Plaintiffs' argument that there is no requirement to show Defendants personally harmed them is inaccurate. *See Hemi*, 559 U.S. at 9) ("A link [to establish proximate cause] that is too remote, purely contingent' or indirec[t] is insufficient.") (internal quotation marks omitted); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998) (explaining that the "irreducible constitutional minimum of standing" requires "causation–a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant.")

For these reasons, as well as the reasons stated in Defendants' memoranda of law, the Court finds that Plaintiffs lack standing to sue the individual Defendants.  In the interest of thoroughness, however, the Court will continue with its analysis Defendants' other arguments for dismissal.

### B.    Whether Plaintiffs Have Stated a RICO Claim

After carefully considering the matter, the Court answers the question in the negative for the reasons stated in Defendants' memoranda of law.  (Dkt. No. 11, Attach. 3; Dkt. No. 16.)  To those reasons, the Court adds the following analysis, which (again) is intended to supplement and not supplant Defendants' reasoning.

Taking Defendants arguments out of order, the Court finds that Plaintiffs' Complaint fails to satisfy fundamental notice and pleading requirements under Fed. R. Civ. P. 8 (and Fed. R. Civ. P. 12[b][6]).  Specifically, Plaintiffs' Complaint fails to make a single allegation about

the alleged conduct of any one of the seventy-five individual Defendants, and, even where the

Complaint and civil RICO statement does refer to Defendants, it lumps their conduct together by

listing each Defendant as an "agent," "manager," or "board member" who "performed,"

"directed," or "aided and abetted" a conspiracy without any differentiation or explanation as to

which "agents," "managers," or board members engaged in each predicate act.  (Dkt. No. 11,

Attach. 3, at 17-18.)  "Although Fed. R. Civ. P. 8 does not demand that a complaint be a model

of clarity or exhaustively present the facts alleged, it requires, a minimum, that a complaint give

each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'"

*Atauhene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (quoting *Ferro v. Ry. Express

Agency, Inc.*, 296 F.2d 847, 851 [2d Cir. 1961]).  "By lumping all the defendants together in each

claim and providing no factual basis to distinguish their conduct, [Plaintiffs'] complaint failed to

satisfy [Fed. R. Civ. P. 8's] minimum standard." *Atauhene*, 10 F. App'x at 34.  Because

Plaintiffs fail to provide the individual Defendants with any meaningful notice of the factual

basis underlying Plaintiffs' Complaint, they have failed to provide Defendants with sufficient

notice under Fed. R. Civ. P. 8.

Alternatively, the Court finds that Plaintiffs' Complaint warrants dismissal due to its

failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Regarding Plaintiffs' RICO conspiracy

claim, even though Plaintiffs' Complaint makes no mention of an alleged conspiracy, their

allegation is first mentioned in Plaintiffs' RICO statement.  (Dkt. No. 1; Dkt. No. 10.)   In

particular, Plaintiffs allege that Defendants participated in a conspiracy by engaging in "an

operational agreement among the DFA's individual board members and managers to create and

use the fear of personal failure . . . to force substantially all U.S. diary farmers to market their

milk through Defendants' enterprise." (Dkt. No. 10, at 14.) "Because the core of a RICO conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Malvar Egerique*, 2020 WL 1974228, at *8 (quoting *Hecht*, 897 F.2d at 25). Such a broad-sweeping allegation, without more, woefully fails to meet the plausibility standard articulated above in Part II.A. of this Decision and Order. Plaintiffs fail to allege any factual nature of an alleged operational agreement, the particular Defendants who participated in the planning of individual predicate acts, or any particular facts such as dates, times, or locations of meetings where such an agreement was discussed. Accordingly, the Court finds that Plaintiffs have failed to plead facts sufficiently alleging that Defendants engaged in a civil RICO conspiracy.

Turning to Plaintiffs' RICO claim, the Court also finds that Plaintiffs' Complaint fails to allege a substantive RICO violation for the reasons stated in Defendants' memoranda of law. (Dkt. No. 11, Attach. 23-30; Dkt. No. 16, at 10-13.) For example, the Court finds that Defendants' alleged conduct amounted to lawful hard-bargaining due to the fact that Plaintiffs did not have any "preexisting right" or entitlement to do business with the DFA. For this reason, as well as the reasons raised in Defendants' memoranda of law, the Court finds that Plaintiffs have failed to plead facts plausibly suggesting Defendants committed a civil RICO violation.

C.      **Whether the Court Lacks Personal Jurisdiction over Defendants**

After carefully considering the matter, the Court answers the question in the negative for the reasons stated in Defendants' memoranda of law. (Dkt. No. 11, Attach. 3; Dkt. No. 16.) To those reasons, the Court adds the following analysis, which (again) is intended to supplement and not supplant Defendants' reasoning.

Section "1965(a) grants personal jurisdiction over an initial defendant in a civil RICO case to the district court for the district in which that person resides, has an agent, or transacts his or her affairs." *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 71 (2d Cir. 1998). "In other words, a civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant." *PT United Can Co. Ltd.*, 138 F.3d at 71. Section "1965(b) provides for nationwide service and jurisdiction over 'other parties' not residing in the district, who may be additional defendants of any kind . . . ." *Id*. Jurisdiction is not automatically conferred on the additional defendants; a plaintiff must show that the "ends of justice so require." *Id*. To satisfy the "ends of justice" standard, a plaintiff must show that the RICO claim "could not otherwise be tried in a single action because no district court could exercise personal jurisdiction over all of the defendants." *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 315 (S.D.N.Y. 2010) (collecting cases).

As Defendants argue, Plaintiffs' Complaint fails to allege that a specific Defendant resides in, is found in, has an agent in, or transacts his or her affairs in the Northern District of New York. (Dkt. No. 11, Attach. 3, at 32.) Although Plaintiffs argue that Defendants, acting as corporate agents, are subject to the Northern District's personal jurisdiction because their actions were outside of the DFA's ordinary activities, the Court disagrees. In particular, Plaintiffs' Complaint fails to allege any facts plausibly suggesting that a single Defendant conducted business within the Northern District of New York. Plaintiffs also conspicuously chose to not name the DFA as a Defendant in this action. In any event, the fact that the DFA contracted business within the Northern District of New York, by itself, fails to support Plaintiffs' allegations that any of the individual Defendants were involved in business transactions that

were separate from the DFA's ordinary activities within this district.

      **D.**    **Whether Plaintiffs Violated Local Rule 9.2**

      After carefully considering the matter, the Court answers the question in the negative for the reasons stated in Defendants' memoranda of law.  (Dkt. No. 11, Attach. 3; Dkt. No. 16.)  To those reasons, the Court adds the following analysis, which (again) is intended to supplement and not supplant Defendants' reasoning.

      Local Rule 9.2 requires a party asserting a claim under RICO to "file a RICO statement within thirty (30) days of the filing of the pleading containing such claim."  N.D.N.Y. L.R. 9.2. Because Plaintiffs filed their Complaint on June 22, 2020 (Dkt. No. 1), they were required to file their RICO statement by July 22, 2020; instead, Plaintiffs filed their RICO statement on September 3, 2020.  (Dkt. No. 10.)  On this ground alone, the Court can dismiss Plaintiffs' Complaint.  *See Spoto v. Herkimery Cnty. Trust*, 99-CV-1476, 2000 WL 533293, at *3 n.3 (N.D.N.Y. Apr. 27, 2000) (Munson, J.) ("Indeed, the Court would be justified to dismiss Plaintiff's complaint based upon their very untimely filing of their Local Rule 9.2 RIC Statement."); *Dicob v. Knuckles*, 07-CV-1044, 2007 WL 3353089, at *1 (N.D.N.Y. Nov. 7, 2007) (McAvoy, J.) (extending the deadline only 20 days for a pro se litigant); *cf. Pierce v. Homecomings Fin. LLC*, 17-CV-0882, 2017 WL 5991750, at *2 n.2 (N.D.N.Y. Dec. 4, 2017) (Sannes, J.) (noting that Plaintiff had failed to file a Civil RICO Statement pursuant to Local Rule 9.2, and explaining that "Plaintiff's RICO claim may be dismissed for this reason alone"); *Amaker v. Kelley*, 01-CV-0877, 2009 WL 385413, at *11 (N.D.N.Y. Feb. 9, 2009) (Scullin, J.) (explaining that the failure to file a RICO Statement provides a threshold for dismissal of a plaintiff's RICO claim).  Despite Plaintiffs' arguments that their failure to abide by Local Rule

9.2 is moot and both parties were working in good faith on other aspects of the case, Plaintiffs'

arguments defy logic for two reasons.

First, Defendants' argument that Plaintiffs' RICO statement is not helpful to Plaintiffs'

claims has no bearing on the "mootness" of Plaintiffs' failure to abide by the Local Rules.

Second, regardless of Plaintiffs' good-faith work on other aspects of this case, they still needed

to but failed to abide by a Local Rule, and further needed to but failed to seek the Court's

permission to file their RICO statement approximately six weeks late (or provide any

explanation for failing to do so).  Accordingly, the Court also dismisses Plaintiffs' Complaint for

failure to abide by Local Rule 9.2.

### E.      Nature of Dismissal

Finally, some discussion is appropriate regarding the nature of the dismissal in this

action.  Ordinarily, "[w]here it appears that granting leave to amend is unlikely to be productive,

. . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987

F.2d 129, 131 (2d Cir. 1993) (citations omitted).[6]  "[A]n opportunity to amend is not required

where the defects in the plaintiff's claims are substantive rather than merely formal, such that

any amendment would be futile." *Sorrentino v. Barr Labs. Inc.*, 09-CV-0591, 2010 WL

2026135, at *5 (May 20, 2010 N.D.N.Y.) (Suddaby, C.J.).

---

[6]       *Accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22,
1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment
would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis*, 371 U.S.
178, 182 (1962) (finding that denial was not an abuse of discretion where an amendment would
be futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's
causes of action is substantive; better pleading will not cure it.  Repleading would thus be futile.
Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum
Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege
any fact sufficient to support its claim, a complaint should be dismissed with prejudice.")
(citation omitted); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("[W]here . . .
there is no merit in the proposed amendments, leave to amend should be denied").

Here, because the Court's threshold ground for dismissal was Plaintiffs' lack of standing, the Court must first determine whether that dismissal was pursuant to Fed. R. Civ. P. 12(b)(6) (which would permit a dismissal with prejudice) or Fed. R. Civ. P. 12(b)(1) (which would not permit a dismissal with prejudice). After carefully considering the matter, the Court finds that the dismissal was pursuant to Fed. R. Civ. P. 12(b)(6) for two reasons: (1) the determination was based on the allegations contained within the four corners of Plaintiffs' Complaint and not based on findings of fact derived from documents outside of the four corners of Plaintiffs' Complaint; and (2) the determination addressed the question whether the Court could grant relief to a party in *Plaintiffs'* (alleged) position, not whether the Court could grant relief to *any* plaintiff given the claim asserted. *Rent Stabilization Ass'n of City of New York v. Dinkins*, 5 F.3d 591, 594 & n.2 (2d Cir. 1993).

Having rendered that determination, the Court next must consider whether it appears that better pleading would cure the defects. The Complaint was 17 pages long, and it was effectively amended by the Civil RICO Statement and attachments (which were approximately 82 pages long). *See, supra,* note 1 of this Decision and Order. Despite the breadth and detail of facts alleged in those documents, the documents were conspicuously absent of either factual allegations establishing standing (the threshold ground for dismissal) or factual allegations plausibly suggesting a claim upon which relief can be granted (an alternative ground for dismissal). For these reasons, the Court finds that the defects in the Complaint are substantive and not merely formal, and that it does not appear that better pleading would cure these defects.

### F.    Whether Defendants Are Entitled to Sanctions

After carefully considering the matter, the Court answers this question in the negative for

the reasons set forth below.

The Court begins its analysis by noting that the one of Defendants' arguments in support of sanctions essentially repeats their arguments in support of their motion to dismiss.  (Dkt. No. 15, Attach. 6, at 14-23.)  Instead of repeating itself, the Court relies on its analysis in Part III.B. of this Decision and Order to conclude that Plaintiffs' Complaint has a basis in law and fact, and it did not present frivolous arguments unsupported by law or factual contentions lacking evidentiary support.  *See* Fed. R. Civ. P. 11(b) (indicating that sanctionable conduct includes [1] presenting a paper for an improper purpose, [2] presenting frivolous arguments unsupported by law, [3] presenting factual contentions lacking evidentiary support, and [4] denying factual contentions where denial is not warranted on the evidence).  Therefore, the Court rejects Defendants' first argument.

The Court also rejects Defendants' argument that Plaintiffs' Complaint was filed for an improper purpose.  "In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*."  *Jianjun Lou v. Trutex, Inc.*, 872 F. Supp. 2d 344, 350 n.6 (S.D.N.Y. 2012); *see also Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of a pleading in another lawsuit).  "The Court may take judicial notice of a document filed in another court to establish the fact of such litigation and related filings, but not for the truth of the matters asserted in the other litigation."  *Malvar Egerique*, 2020 WL 1974228, at *7 (citing *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 [2d Cir. 2006]).  The Court takes judicial notice of Plaintiffs' Counsel's prior history with the DFA, as detailed in Defendants' memorandum of law.  (Dkt. No. 15, Attach. 6, at 11-12.)  Although

Plaintiffs' Counsel's prior conduct and history with the DFA and Defendants presents a close

call, the Court is unable to grant sanctions to Defendants.  Plaintiffs' Complaint, although

deficient, raised legal and factually challengeable assertions, albeit barely.  Plaintiffs and their

counsel appear to have filed the current action in good faith on behalf of individual Plaintiffs,

and not to harass the DFA and Defendants.

      For these reasons, the Court denies Defendants' motion for sanctions.

      **ACCORDINGLY,** it is

      **ORDERED** that Defendants' motion to dismiss (Dkt. No. 11) is **<u>GRANTED</u>**; and it is

further

      **ORDERED** that Plaintiffs' Complaint (Dkt. No. 1) is **<u>DISMISSED</u> with prejudice**; and

it is further

      **ORDERED** that Defendants' motion for sanctions (Dkt. No. 15) is **<u>DENIED</u>**.

Dated: August 24, 2021
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge

34